SIXTH STREET REALTY CO. *vs.* NATHAN HOROWITZ.

JANUARY 31, 1930.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Barrows, and Murdock, JJ.

SWEENEY, J. This is an action of the case in assumpsit in which a jury returned a verdict for defendant. The action is before this court on plaintiff's exceptions. The first exception considered is the one to the decision of the

trial justice denying plaintiff's motion for a new trial on the grounds that the verdict was against the law and the evidence.

The following facts are not controverted. Plaintiff is a Florida corporation, engaged in the business of buying and selling real estate in Miami, and defendant is a resident of Providence. July 18, 1925, defendant was in Miami and purchased from a Mr. Woolf a contract by which plaintiff agreed to sell and convey three lots of land in Miami, with the buildings thereon, for $40,000—$20,000 cash on delivery of the deed and three notes for the balance secured by a mortgage on the property. Defendant testified that he left a check for $20,000 with the broker in charge of the sale and returned to Providence. Defendant signed three notes for $6,666.68 each. The notes were dated at Miami, August 8, 1925, and made payable to the order of the plaintiff at the Bank of Bay Biscayne in Miami, with interest payable semi-annually. It does not appear in the record when or where the defendant executed the mortgage to secure these notes.

Plaintiff conveyed the land to defendant by deed dated July 24, 1925. The deed was acknowledged in New York City, July 27, by plaintiff's secretary and in Miami, August 8, by its president, Mr. Bernstein. The deed was filed for record August 25, 1925.

February 9, 1926, defendant returned to Miami and, after talking with Mr. Bernstein, paid the Bank of Bay Biscayne $800 interest on the notes up to February 8, 1926. This payment is indorsed on each note. Defendant made no further payments on the notes and, the semi-annual interest being overdue, the mortgage was foreclosed. The proceeds of the foreclosure were applied in payment of one of the notes in full and a small amount on account of another note. The application of these payments was indorsed on the notes December 21, 1927. Plaintiff then commenced this action to recover the balance due on the two notes.

Plaintiff proved a *prima facie* case when its secretary produced the notes and testified that the amount due on them, with interest to the date of the trial, was $16,562.77. *Kirk* v. *Ball*, 45 R. I. 93; 8 C. J. 1048. The defenses were (1) failure of consideration because plaintiff's deed conveyed the land to defendant "Subject to whatever building and other restrictions there may be of record affecting this property" while plaintiff's contract to sell the property provided that the purchaser was to receive an abstract of title "showing good and marketable title free and clear from all taxes, assessments, liens and encumbrances". (2) An oral agreement made February 9, 1926, by which Mr. Bernstein agreed to rescind the entire transaction if he could not remove the building restrictions and return the notes and money received and defendant was to execute and deliver a deed conveying the premises to plaintiff.

This defense was open to defendant under §3039 of our Negotiable Instrument Law which provides that: "Absence or failure of consideration is matter of defense . . . and partial failure of consideration is a defense *pro tanto* whether the failure is an ascertained and liquidated amount or otherwise." Under this statute, as well as by the common law, it was necessary for the defendant to introduce evidence to overcome the *prima facie* case made out by the plaintiff. *Atlas Bank* v. *Doyle*, 9 R. I. 76; 8 C. J. 994.

Defendant's testimony shows that he left the completion of the purchase of the property with his broker and attorney in Miami. The broker was called as a witness by defendant and testified that he received the deed from plaintiff's brokers August 25, 1925; placed the revenue stamps ($40) upon it; canceled the stamps; filed the deed for record in the county clerk's office; paid the recording fee and requested the clerk to mail the deed to defendant at Providence after it had been recorded. He also testified that he did not read the deed and that defendant was represented by an attorney at law at the time. The attorney did not testify. Defendant testified that after he returned to Providence he

heard, in an indirect way, that the land was subject to certain restrictions and that on December 14, 1925, he mailed a letter to Mr. Bernstein. A copy of the letter was offered in evidence, although plaintiff's attorney protested that plaintiff had not received the original letter. Defendant stated in this letter: "Unless these restrictions are lifted, which prevent me from building on the extra lot, I shall have to take steps to recover money paid to you on this transaction." He also wrote that he expected to be in Miami shortly and would take this matter up upon his arrival. Defendant also testified that when he was in Miami, February 9, 1926, he had a conversation with Mr. Bernstein about the restrictions on the property and the payment of the interest on the mortgage notes; that, upon complaining about the restrictions, Mr. Bernstein said he did not know anything about it but would find out and, if there were any restrictions, he would lift them and if he could not lift them he would give defendant his money. Defendant then paid $800 to the bank for the accrued interest on the notes to February 8, 1926. Mr. Bernstein died soon after this meeting and nothing further appears to have been done until August 4, 1926, when plaintiff's attorney in New York City notified defendant that an installment of principal and interest would be due August 8. Several letters passed between defendant and the attorney relative to the adjustment of this matter but without result and the mortgage was foreclosed.

We have carefully examined the record and fail to find any evidence to support defendant's contention that there were building restrictions of record affecting his property. The deed to defendant does not say so and Mr. Bernstein, plaintiff's president, did not admit there were any when he talked with defendant February 9, 1926. If there were any building restrictions on the land, the burden was on the defendant to prove them by competent evidence. In the absence of any evidence as to the nature, character and extent of the restrictions, if any, the jury could not determine whether there had been a total or partial failure of

consideration for the notes. As there was no evidence to support the verdict, plaintiff's motion for a new trial should have been granted.

Defendant produced in evidence a deed acknowledged January 17, 1927, reconveying the property to the plaintiff. Plaintiff objected to the admission of this deed and took an exception to its admission. Defendant testified he mailed the deed to the Bank of Bay Biscayne and that it was returned to him in about three months. The deed was not accepted by plaintiff. It was made after defendant was notified foreclosure proceedings would be commenced. The deed was a self-serving document, irrelevant to any issue in the case, and should have been excluded.

Defendant was asked on cross-examination if this was the first piece of real estate he had bought in Florida. He answered: "Anything I bought I wasn't fooled like they fooled me." This answer was not responsive to the question and should have been stricken from the record on plaintiff's motion. The answer was prejudicial to plaintiff as defendant claimed that the clause about the building restrictions was written in the deed without the knowledge of himself or his agents.

The exceptions above considered are sustained; the other exceptions are overruled and the case is remitted to the Superior Court for a new trial.

*Edward C. Stiness, Francis J. O'Brien,* for plaintiff.
*Robinson & Robinson, Joseph E. Adelson,* for defendant.